UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:16-cr-00127-DAD-BAM |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO SUPPRESS |
| ABDULLAH ALMASHWALI, | (Doc. No. 47) |
| Defendant. | |

On January 13, 2017, defendant Abdullah Almashwali filed a motion to suppress all evidence seized as a result of a search of an apartment in Brooklyn, New York by agents of the DEA, IRS, HSI and other law enforcement agencies. (Doc. No. 47.) The government opposed the motion on February 3, 2017. (Doc. No. 61.) A reply was filed on February 16, 2017. (Doc. No. 67.) The court heard oral argument on February 27, 2017 and took the motion to suppress evidence under submission.[1]  Assistant U.S. Attorneys Grant Rabenn and Ross Pearson appeared at the hearing on behalf of the government and attorneys Virna Santos and H. Dean Steward appeared on behalf of defendant Almashwali. For the reasons set forth below, defendant's motion to suppress, as well as his request for an evidentiary hearing in connection with that motion, will be denied.

---

[1] Defendant's motion for a change of venue was heard on that same date and was denied from the bench.

1

**Background**

On August 11, 2016, defendant Almashwali was indicted in this district on charges of conspiracy to distribute and possess with the intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841 (Count One) and two counts of distribution of heroin in violation of 21 U.S.C. § 841. (Doc. No. 13.) There is also a criminal forfeiture allegation in the indictment brought pursuant to 21 U.S.C. § 853(a). (*Id*.) In the pending motion, defendant seeks suppression of five items of evidence seized from the Brooklyn apartment by federal agents on August 2, 2016 and one additional item of evidence located in the apartment by the landlord's cleaning crew on August 3, 2016 and turned over to the federal agents that same day. (Doc. No. 47 at 5–6.)

Defendant contends that the apartment in question was his, that federal agents conducted a warrantless search of that apartment without his consent and that the purported landlord, Aleksandr Burman, had no authority to consent to the search of the apartment. (Doc. No. 47 at 5–8.) Defendant also argues that the baggie of white powder discovered by the cleaning crew on August 3, 2016, is the fruit of the poisonous tree since it was part and parcel of the agents' warrantless and unlawful search on August 2, 2016. (*Id*. at 7.) Finally, defendant requests an evidentiary hearing be held in connection with his motion to suppress evidence to determine whether he gave his consent to the search and whether Mr. Burman had the authority to consent to the search. (*Id*. at 7-8.)

In opposition, the government first argues that defendant Almashwali lacks standing to challenge the search of the apartment by federal agents because he had been evicted from that apartment and therefore lacked a reasonable expectation of privacy in that location. (Doc. No. 61 at 4.) Alternatively, the government contends that Mr. Burman had actual or, at the very least, apparent authority to consent to the search of the apartment and did so and that, in any event, the cleaning crew was a private, not government, actor in discovering the baggie of white powder the following day, rendering suppression of that evidence inappropriate. (*Id*. at 6–9.) In support of its opposition the government has presented numerous exhibits including several addressing defendant's eviction proceedings. (Doc. Nos. 61-1, 77.) In light of that evidence, the government contends that an evidentiary hearing is unnecessary.

In reply, defendant argues that government surveillance of him suggested he at least had access to the apartment building and perhaps to the apartment as well on August 2, 2016, prior to the search, noting that he was seen by agents exiting the building with certain items, getting into a cab which was subsequently stopped by agents who then arrested defendant. (Doc. No. 67 at 2.) Defendant also disputes: (1) whether he had been evicted and whether a notice of eviction had been posted on the apartment door prior to the search; and (2) whether Mr. Burman owned the building and had authority to consent to the search. (*Id*. at 2-4.)[2]

For the reasons set forth below, the court concludes that on August 2, 2016, when the search in question was conducted, defendant Almashwali had been evicted from the apartment and therefore had no legitimate expectation of privacy in that residence at the time of the search and therefore lacks standing to challenge it. For this reason, defendant's rights under the Fourth Amendment were not violated by the warrantless search and the court need not address the remainder of his arguments.

**Analysis**

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. With respect to standing and one's reasonable expectation of privacy, the Ninth Circuit has stated:

> To have standing to seek suppression of the fruits of the agent's search, [one] must show that he personally had "a property interest protected by the Fourth Amendment that was interfered with . . ., or a reasonable expectation of privacy that was invaded by the search." *United States v. Padilla*, 111 F.3d 685, 688 (9th Cir. 1997) (quoting *United States v. Padilla*, 508 U.S. 77, 82 (1993)). . . .
>
> * * *
>
> The reasonable expectation of privacy turns on (1) whether the person had "an actual (subjective) expectation of privacy," and (2) whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In

---

[2] In a supplement to his motion to suppress, defense counsel presents additional argument based upon recently discovered information in support of their contention that Mr. Burman lacked authority to consent to the search of the apartment. (Doc. No. 75.)

> short, it turns on whether the individual's subjective expectation of privacy is objectively reasonable. *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007) (citation omitted).

*United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013).

In moving to suppress evidence, it is the defendant's burden to establish his standing to do so. *Id.* at 808; *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1990). One's continuing presence inside a residence from which he has been evicted has been found to be "wrongful" and whatever subjective expectation of privacy the former renter may hold in the residence from which he has been evicted has been found to not be one that society is prepared to recognize as reasonable. *United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011) ("Because [the evicted resident] had no legitimate expectation of privacy in the residence, no Fourth Amendment search occurred."); *United States v. Tealer*, 8:14CR185, 2016 WL 5816915, at *2 (D. Neb. Oct. 5, 2016) ("At the time of the search, the landlord was legally and lawfully in possession of the Arias Apartment. Therefore, because the landlord, and not Jeneva Arias, was in legal possession of the Arias Apartment, Tealer lacks standing to assert a Fourth Amendment violation as an overnight guest because any reasonable expectation of privacy he might have had was lost once the landlord regained legal possession of the Arias Apartment through the eviction proceedings."); *see also United States v. Cunag*, 386 F.3d 888, 895 (9th Cir. 2004) (where a hotel took "justifiable affirmative steps" to repossess a hotel room, the former occupant lacked the protections of the Fourth Amendment in connection with that location); *United States v. Dorais*, 241 F.3d 1124, 1127–28 (9th Cir. 2001) (holding that a hotel guest did not have a reasonable expectation of privacy after staff had taken "affirmative steps" to evict him); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977) ("Appellant had no reasonable expectation of privacy with respect to a room from which he had been justifiably ejected. . . . Once ejected for good cause, the room reverted to the control of the management, and the former occupant had no continuing right to privacy in the room.")

Here, the government has presented documentary evidence establishing that defendant Almashwali had been evicted from his apartment and that on August 2, 2016, when federal agents conducted the search, control of the apartment had reverted to the landlord. In this regard,

4

records of the Civil Court of New York City, County of Kings reflect the following.  Eviction proceedings were initiated against defendant by MA Real Estate Holdings, LLC on January 22, 2016.  (Doc. Nos. 61-3 at 1; 77 at 1.)  It appears that judgment in favor of the landlord was initially entered on February 16, 2016, but was stayed by stipulation of the parties that same day.  (*Id*.)  After additional court proceedings, on June 30, 2016, defendant Almashwali submitted his own affidavit to the state court attesting that on May 10, 2016, he had appeared in court and had entered "into a stipulation of settlement whereby I consented to vacate the subject premises by June 30, 2016."  (Doc. No. 61-4 at 4.)   In his June 30 affidavit, defendant acknowledged that the deadline for him to vacate the apartment was about to expire and that he was subject to eviction at any time, but sought an approximately thirty day extension of time in which to vacate.  (*Id*. at 4-5.)  In response to defendant's affidavit, the court put the matter on calendar for hearing on July 18, 2016 at 9:30 a.m. as to his request for a stay of execution of the warrant of eviction and an additional extension of time in which to vacate the apartment.  (*Id*. at 2.)   However, on July 18, 2016, following the hearing, defendant's motion for a further stay and extension of time was denied.  (Doc. Nos. 61-5; 77.)[3]  Finally, a Notice of Marshal's Legal Possession was issued in the Civil Court of New York City, County of Kings eviction proceeding against defendant Almashwali specifically stating that "The Landlord has legal possession of these premises as of: Tuesday, August 2, 2016."[4]  (Doc. No. 61-6 at 2.)  That notice was also signed by the Marshal, City of New York.  (*Id*.)

Defendant contests whether this notice was posted on the apartment door at the time of the agents' search and asserts that an evidentiary hearing should be held in order to make a

---

[3] Defendant argues that the court's handwritten order dated July 18, 2016 is "virtually illegible" and "of no value."  (Doc. No. 67 at 4.)  The undersigned agrees that some words in that order are more easily decipherable than others.  However, the order does state that "respondent has shown insufficient good cause to support an extension of time" and "there has been no rent paid for 8 months."  (Doc. No. 61-5 at 2.)  Moreover, the state court's case summary records very clearly state that on July 18, 2016, the same date as the hand written order, respondent's motion to vacate the eviction judgment was denied due to the failure of respondent (defendant Almashwali) to comply with the parties' stipulation.  (Doc. No. 77 at 2.)

[4] August 2, 2016 was the day of the search of the apartment which defendant Almashwali seeks to challenge here.

1  determination in that regard.  The court finds the argument to be unpersuasive.  Whether the
2  notice was physically posted on the apartment door at the time of the search need not be
3  determined in light of the evidence before the court establishing that at the time of the search the
4  apartment was legally in the possession of the landlord and not defendant Almashwali.  (*See* Doc.
5  No. 61-6 at 2.)  Moreover, the evidence before the court establishes that defendant Almashwali:
6  was well-aware of the eviction proceedings, having personally participated in them;
7  acknowledged that his extension of time to vacate the apartment had expired on June 30, 2016;
8  and had not paid rent on the apartment in over eight months.  (Doc. Nos. 61-3, 61-4, 61-5, 77.)  In
9  light of this evidence of eviction, defendant Almashwali cannot be said to have had a reasonable
10 expectation of privacy in the Brooklyn apartment on August 2, 2016 or thereafter.  *See Curlin*,
11 638 F.3d at 565; *Tealer*, 2016 WL 5816915, at *2; *see also Cunag*, 386 F.3d at 895; *Dorais*, 241
12 F.3d at 1127-28; *Haddad*, 558 F.2d at 975.[5]

For all of the reasons set forth above, defendant Almashwali's request for an evidentiary hearing and his motion to suppress evidence (Doc. No. 47) are hereby denied.

IT IS SO ORDERED.

Dated:  **March 14, 2017**                            _Dale A. Drozd_
                                                      UNITED STATES DISTRICT JUDGE

---

[5] In light of this conclusion, defendant's remaining arguments in support of his motion to suppress evidence need not be addressed.