UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDULLAH ALMASHWALI,<br><br>Defendant. | No. 1:16-cr-00127-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT ALMASHWALI'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 144) |

Pending before the court is a *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by defendant Abdullah Almashwali. (Doc. No. 144.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On April 14, 2017, defendant Almashwali entered pleas of guilty to one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and two counts of distribution of heroin and the aiding and abetting of the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

1

(Doc. Nos. 13, 106.) On July 24, 2017, the court sentenced defendant to a term of imprisonment of 78 months in the custody of the U.S. Bureau of Prisons ("BOP") on each count, with those sentences to be served concurrently, followed by a concurrent term of supervised release of 36 months on each count, with the term of supervised released to become unsupervised if deported. (Doc. No. 118 at 2–3.) The court also imposed the mandatory $100.00 special assessment for each count. (*Id.* at 6.)

Defendant is currently serving his sentence at Allenwood Medium Federal Correctional Institution ("FCI Allenwood Medium") in Allenwood, Pennsylvania. (Doc. No. 155 at 2.) As of the date of this order, and including prior jail time credits, defendant Almashwali has served approximately 61 months of his 78-month sentence. (Doc. No. 155-1 at 3–4.) Accounting for good time credit, his projected release date is July 14, 2022. (Doc. No. 155-1 at 2.)

On September 8, 2020, pursuant to defendant's request for counsel, the court appointed counsel to represent defendant in his seeking compassionate release. (Doc. No. 146.) On May 20, 2021, appointed counsel notified the court that no supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) would be forthcoming. (Doc. No. 153.) The government filed its opposition to the pending motion on June 7, 2021. (Doc. No. 155.) To date, defendant has not filed a reply thereto.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018).

/////

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

---

where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

*States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.    Administrative Exhaustion**

In this case, the government concedes that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 155 at 3.) Specifically, defendant Almashwali submitted a written request for compassionate release to the warden of FCI Allenwood on June 26, 2020, and the warden denied that request on July 13, 2020.[4] (*Id.*) Accordingly, the court will turn to the merits of defendant's motion.

**B.    Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical

---

[4] Neither party has addressed whether the defendant was required to appeal the warden's denial. Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession regarding administrative exhaustion and will address the merits of defendant's pending motion.

conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp.

3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In the pending motion, defendant Almashwali argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist because he is incarcerated at FCI Allenwood Medium, which he contends is a "brush fire" environment posing a high risk of experiencing a COVID-19 outbreak and which he asserts has not performed any COVID-19 testing on any inmates or staff. (Doc. No. 144 at 2–3.) However, defendant does not identify any medical conditions from which he allegedly suffers that may place him at an increased risk of severe complications from COVID-19 were he to infected with the virus.

In its opposition to the pending motion, the government argues that defendant Almashwali has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (Doc. No. 155 at 5.) The government notes that defendant previously contracted COVID-19 and was asymptomatic. (*Id.* at 5.) The government emphasizes that of particular importance is the fact

---

[5] Here, however, because defendant Almashwali is only 36 years old (Doc. No. 155-1 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

8

that during his term of imprisonment defendant Almashwali was offered and refused the COVID-19 vaccine, thereby undermining his argument that extraordinary and compelling reasons exist based on the risk of severe illness posed to him were he to contract COVID-19 again. (*Id.* at 5–6.) The government also observes that defendant has been diagnosed with "general, but not moderate or severe, asthma and prescribed an inhaler." (*Id.* at 5.) While the government does not dispute defendant's diagnosis of asthma, it emphasizes that the Centers for Disease Control and Prevention ("CDC") recognizes only "moderate to severe" asthmas as a risk factor in connection with COVID-19. (*Id.*)

     The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he has refused vaccination, combined with the fact that he has already suffered from COVID-19 and recovered and that FCI Allenwood Medium currently reports zero inmates and only two staff members as suffering with active, positive COVID-19 cases. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited September 20, 2021).[6] It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions, including "moderate to severe" asthma, may be "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021); (Doc. No. 155 at 5). Here, the court finds that the absence of a formal diagnosis that he suffers from moderate to severe asthma does not necessarily mean that defendant Almashwali is not at an increased risk of suffering severe illness if he were to contract COVID-19 again, due to his asthma condition for which he has been prescribed an albuterol inhaler by medical staff at FCI Allenwood Medium according to his medical records. (Doc. No. 159 at 9–12—sealed.) But notably, defendant does not argue that FCI Allenwood Medium is failing to adequately treat his asthma or that he is unable to provide

---

[6] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

9

self-care for his conditions. Indeed, defendant's medical records suggest the opposite. (*See* Doc. No. 159—sealed.) *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling).

As to defendant's unvaccinated status, the government notes, and defendant's medical records show, that defendant refused to receive the COVID-19 vaccine on March 1, 2021; thus, defendant had the opportunity to be vaccinated before the government filed its opposition to the pending motion for compassionate release. (Doc. Nos. 155 at 5; 159 at 52–53—sealed.) While vaccinated individuals may nonetheless contract COVID-19, it appears exceedingly rare for a vaccinated individual to both contract the virus and to suffer a severe illness as a result. *See* Lila Seidman, *Napa County Records First Death of Fully Vaccinated Person from COVID-19*, L.A. Times (June 7, 2021), https://www.latimes.com/california/story/2021-06-07/napa-county-records-first-fully-vacinated-person-covid-death. Here, defendant is seeking his release from prison based on the argument that he will suffer a severe illness if he were to contract COVID-19 again. According to the CDC, authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 27, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant]

10

is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Or. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").  Notably, as another judge of this court emphasized recently, "[i]f defendants could buttress their motion for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive." *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *4 (E.D. Cal. Mar 24, 2021).  The undersigned here agrees and concludes it would set a dangerous and unreasonable precedent if the court were to allow inmates who refuse vaccination to successfully rely upon their lack of vaccine protection in support of their claims for compassionate release.

In light of all of the above, the court concludes that although defendant Almashwali suffers from asthma, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A), in large part because that risk could

be significantly mitigated by his receiving of the COVID-19 vaccination. Therefore, his motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Almashwali's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker*, 461 F. Supp. 3d at 979.

Defendant does not address the § 3553 sentencing factors in his *pro se* motion. The government contends that consideration of the § 3553(a) sentencing factors do not support a shortened sentence due to the seriousness of defendant's offenses and because defendant received a shorter sentence than the upper end of the guideline recommendations. (Doc. No. 155 at 6.) The government emphasizes that defendant was involved in "serious, high volume drug trafficking crimes in this case" and that he faces additional, unrelated state drug charges in New York. (*Id.*)

As noted above, defendant Almashwali is currently serving a 78-month sentence of imprisonment for one count of conspiracy to distribute and possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and two counts of distribution of heroin and cocaine and the aiding and abetting of the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. (Doc. Nos. 113 at 7; 118 at 2.) At the time

---

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

of his sentencing, defendant was found to be responsible for the distribution of 1,510 grams of heroin and 71 grams of cocaine. (Doc. No. 113 at 7.) Pursuant to a sentencing agreement between the parties (Doc. Nos. 115, 117) defendant's total offense level in this case was found to be 28 and his criminal history was I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 78 and 97 months on each count of conviction. (Doc. No. 113 at 21.) The undersigned imposed a low end of the guideline sentence of a 78-month term of imprisonment. (Doc. No. 118.)

"[T]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant has served approximately 78% of the 78-month sentence imposed. (*See* Doc. No. 155-1 at 3.) In the court's view, considering that defendant already received a low-end of the guideline range sentence, a reduction of defendant's 78-month sentence would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with consideration of the § 3553(a) sentencing factors.[8]

---

[8] Defendant also requests that the court either reduce his sentence to time served or amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 144 at 2.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at

**CONCLUSION**

Because defendant Almashwali has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 144) is denied.

IT IS SO ORDERED.

Dated: **September 20, 2021**          /s/ Dale A. Drozd
                                                                UNITED STATES DISTRICT JUDGE

---

*2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" but rather the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e., 61 months) and modify the conditions of supervised release to require home confinement for the remainder of his term. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Almashwali in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above), the court trusts it will do so. The court notes that according to the BOP, defendant Almashwali is eligible to serve the remainder of his sentence on home detention beginning January 14, 2022. (Doc. No. 155-1 at 3.) The court will go so far to say that it is not opposed to defendant's designation to home confinement as soon as he is deemed eligible by the BOP. However, the issue the court resolves in ruling on the pending motion is only whether in its view, under the applicable legal standards, defendant's sentence should be reduced.